FILED

UNITED STATES DISTRICT COURT 2020 MAR 12  PM 4:34
MIDDLE DISTRICT OF FLORIDA CLERK, US DISTRICT COURT
TAMPA DIVISION MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

CASE NO. 8:20-cr-120-T-02 JSS

18 U.S.C. § 371
STEVEN CHUN                    42 U.S.C. § 1320a-7b(b)(2)
and                            42 U.S.C. § 1320a-7b(b)(l)
DANIEL TONDRE                  18 U.S.C. § 1028(a)(7)

## INDICTMENT

SEALED

The Grand Jury charges:

## COUNT ONE
### (Conspiracy)

At times relevant to this Indictment:

### A. Introduction

### Conspirators

1.      Defendant STEVEN CHUN ("Chun") was a doctor licensed to
practice medicine in Florida. Chun owned and maintained a pain
management medical practice located in Sarasota, Florida, wherein Chun
wrote a large volume of Schedule II prescriptions. Chun was an enrolled
Medicare provider, and he maintained identification numbers with Medicare
and the Drug Enforcement Administration, among others, associated with
Chun personally and with his medical practice.

SEALED

2.      Defendant DANIEL TONDRE ("Tondre") was a Florida resident employed as a sales representative and trainer for Insys Therapeutics, Inc. ("Insys"), whose sales territory included Chun and his medical practice. Tondre was compensated by Insys, in part, with sales commissions based upon paid prescriptions of Subsys, an Insys medication, written by practitioners in Tondre's sales territory, including Chun.

3.      Insys was a company incorporated in Delaware and headquartered in Arizona. Alec Burlakoff ("Burlakoff") held executive management positions at Insys, including Regional Sales Manager for the Southeast Region and Vice-President of Sales. Michael Babich ("Babich") was the Insys President and Chief Executive Officer. Liz Gurrieri ("Gurrieri") was employed at, and at one point supervised, the Insys Reimbursement Center ("IRC").

4.      Pharmacist 1 owned and operated Pharmacy 1 in Bradenton, Florida, where many of Chun's Subsys prescriptions were filled and dispensed.

**Medicare**

5.      Medicare was a federal health care benefit program that provided coverage for people age 65 and older, people under 65 with certain disabilities, and people of all ages with end-stage renal disease.  Individuals who received

benefits from Medicare were commonly referred to as Medicare beneficiaries.

6.      Medicare included coverage under component parts, including Part B and Part D.  Part B covered outpatient health care services, such as physician services and supplies. Part D provided prescription drug coverage to beneficiaries who opted for Part D coverage.  Covered Part D drugs were defined as those that were used for a medically-accepted indication in a Medicare-approved compendium. The Part D program was administered by a number of Part D Plans. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), which was an agency of the United States Department of Health and Human Services ("HHS").  CMS reimbursed Part D Plans for covered drugs.

7.      Chun was an enrolled Medicare provider who certified to Medicare that he would abide by and comply with all Medicare rules and regulations, including that he would refrain from making any false statements or violating the Federal anti-kickback statute.

**Subsys**

8.      Opioids were a therapeutic class of drugs used to relieve pain. Fentanyl was among the most potent opioids available for human use, and was classified as a Schedule II controlled substance under the Controlled Substances Act ("CSA"), meaning that it has a high potential for abuse.  Insys

developed and owned a drug called Subsys, a liquid formulation of fentanyl to be applied under the tongue (a sublingual spray), which allowed it to rapidly enter the bloodstream.

9.      In or around January 2012, the United States Food and Drug Administration ("FDA") approved Subsys for the management of breakthrough pain in patients 18 years or older with cancer who were already receiving, and who were already tolerant to, opioid therapy for their underling persistent cancer pain. Subsys was in a category of fentanyl-based rapid onset opiate drugs known as Transmucosal Immediate Release Fentanyl ("TIRF") products. Because of the risk of misuse, abuse, addiction, and overdose associated with TIRF drugs, including Subsys, the FDA designed and mandated a TIRF Risk Evaluation and Mitigation Strategy ("TIRF REMS"). Among other things, the TIRF-REMS program required that TIRF medicines only be dispensed to an outpatient when the practitioner prescribing the drug, the patient, and the pharmacy dispensing the TIRF drugs were all educated about the safe and effective use of TIRF drugs, including the risks and indications for TIRF drugs.

10.     Chun was a TIRF REMS enrolled prescriber who was issued a TIRF REMS enrollment identification number. As a TIRF REMS enrolled prescriber, Chun was required to meet certain program requirements including

4

that he: (1) successfully complete a knowledge assessment, (2) agree to provide a medication guide to patients receiving TIRF medications and to review such guide with the patients, and (3) maintain TIRF REMS patient-prescriber agreement forms signed by patients receiving TIRF medications. Further, TIRF REMS prescribers like Chun were required to certify and acknowledge that TIRF drugs, including Subsys, were "indicated only for the management of breakthrough pain in patients with cancer, who are already receiving, and who are tolerant to, around-the-clock opioid therapy for their underlying persistent pain" and that "the initial starting dose for TIRF medicines is the lowest dose...and that patients must be titrated individually."

11.    Subsys was sold in dosage strengths of 100, 200, 400, 600, 800, 1,200, and 1,600 micrograms.  Subsys, like other TIRF drugs, was expensive. Depending upon the dosage and number of units prescribed, a Subsys prescription could cost thousands of dollars each month, and was often subsidized by federal health care benefit programs like Medicare or by commercial insurance.  To manage and control prescription costs, many insurers used pharmacy benefit managers ("PBMs"). Most insurers required prior authorizations before paying for TIRF medications like Subsys. In general, patients had to receive a particular medical diagnosis before an insurer would pay for Subsys.

**The Conspiracy**

12.     From in or around mid-August 2012, through in or around July 2015, in the Middle District of Florida and elsewhere, the defendants,

STEVEN CHUN
and
DANIEL TONDRE,

did willfully and knowingly, combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, including Insys executives Burlakoff, Babich, Gurrieri, and others, and Pharmacist 1, to commit offenses against the United States, namely:

      i.      soliciting and receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(1) (the Federal anti-kickback statute); and

      ii.     offering and paying remuneration (kickbacks and bribes), in violation of 42 U.S.C. §1320a-7b(b)(2) (the Federal anti-kickback statute).

**Manner and Means of the Conspiracy**

13.     The manner and means by which defendants Chun and Tondre and their co-conspirators sought to accomplish the purposes of the conspiracy included, among others:

      a.      It was part of the conspiracy that Insys, by and through its officers, managers, and employees, would and did design and implement a

program known as the Insys Reimbursement Center ("IRC") to facilitate the approval of insurance forms, including those submitted for Chun's Medicare patients, that falsely included and misrepresented a cancer diagnosis or other false and misleading diagnoses or conditions to ensure approval of and payment for Subsys prescriptions by Medicare and other insurers and PBMs.

b.      It was further part of the conspiracy that, due to the limited number of patients suffering from breakthrough cancer pain, Insys, by and through its officers, managers, and employees, would and did design and implement illegal kickback and bribery schemes to induce Chun, and others, to prescribe Subsys, instead of other medications, and for conditions other than breakthrough cancer pain.

c.      It was further part of the conspiracy that Insys would and did hire and select sales representatives, such as conspirator Tondre, and other Insys employees, for certain high Subsys-prescribing doctors, including Chun, to ensure and maintain Chun's high-prescribing practices and to facilitate and secure insurance approvals of Subsys prescriptions for Chun's patients.

d.      It was further part of the conspiracy that, in order to conceal and disguise that kickbacks and bribes were being paid to induce Chun and other doctors to prescribe Subsys, Insys would and did falsely

designate payments to Chun and other doctors as "honoraria" for purportedly providing educational presentations regarding Subsys ("Speaker Programs").

   e.  It was further part of the conspiracy that Insys would and did identify and select Chun and other like doctors to participate in the Insys Speaker Programs based on their high-prescribing practices.

   f.  It was further part of the conspiracy that Insys, by and through its officers, managers, and employees, would and did design and implement the Area Business Liaison (ABL) program, which hired ABLs for large Subsys-prescribers, like Chun, to facilitate an increase in prescriptions and dosages of Subsys and the approval of insurance forms, including those submitted for Medicare patients.

   g.  It was further part of the conspiracy that Chun and others at Insys would and did enter into sham agreements to pay Chun to provide purported Speaker Programs, and would and did include language in the sham agreements that falsely and fraudulently stated: (i) the agreements had been entered into "pursuant to arm's length negotiations;" (ii) the Speaker Programs would be "of a professional quality conforming to generally accepted industry standards and practices" and (iii) for Chun's participation in the Speaker Programs, he would be paid an amount consistent with "fair market value."

h.    It was further part of the conspiracy that conspirators would and did solicit, offer, and pay Chun over $275,000 in illegal kickbacks and bribes from Insys for providing purported Speaker Programs under the sham agreements.

i.    It was further part of the conspiracy that Chun, Tondre, employees of Insys, and others would and did conceal and disguise that Chun's purported Speaker Programs for Insys were a sham and façade, in that, the purported programs: (i) did not include an appropriate audience of licensed practitioners seeking educational information regarding Subsys; (ii) repeatedly included the same attendees, including Pharmacist 1, on multiple dates; (iii) did not include any presentation or a very limited presentation by Chun about Subsys; and (iv) were documented using false and fraudulent Speaker Program sign-in sheets that included names and forged signatures of licensed practitioners, including Chun's employees, who did not attend and were not present, and whose identifying information was used without lawful authority.

j.    It was further part of the conspiracy that Chun, Tondre, and other Insys sales representatives and ABLs would and did submit, and cause to be submitted, to Insys, including through third party administrators,

these false and fraudulent Speaker Program sign-in sheets to facilitate and ensure that Chun was paid for the purported Speaker Programs.

         k.     It was further part of the conspiracy that, in exchange for the illegal kickbacks and bribes, Chun would and did: (i) increase his average Subsys prescriptions, both by number and by dosage, which were tracked by Insys on a weekly basis, including some prescriptions which were ineligible for coverage because the patient was not suffering from breakthrough cancer pain; and (ii) cause the submission of increased claims for Chun's Subsys prescriptions to insurers and PBMs, resulting in authorized payments from the insurers and PBMs, including Medicare.

         n.     It was further part of the conspiracy that Pharmacist 1 and others on his behalf would and did communicate with Tondre, Chun, and other Insys Reimbursement Center employees to complete and submit prior authorizations to PBMs and insurers to approve and to receive payments for Chun's Subsys prescriptions dispensed by Pharmacy 1, including payments from Medicare.

         o.     It was further part of the conspiracy that Pharmacist 1 would and did share some of the proceeds received from dispensing Chun's paid Subsys prescriptions with Chun under the guise of a purported consulting agreement.

p.    It was further part of the conspiracy that the conspirators, including Insys executives and Pharmacist 1, would and did engage in multiple meetings, enter into agreements, perform acts, and make statements, to promote and achieve the objects of the conspiracy and to hide and conceal the purposes of the conspiracy, including the creation of false heath care records and other acts committed in furtherance thereof.

**Overt Acts**

14.    In furtherance of the conspiracy, and to accomplish its purposes and objects, defendants Chun, Tondre, and their co-conspirators committed or caused the commission of the following overt acts, among others, in the Middle District of Florida and elsewhere:

a.    On or about August 15, 2012, shortly after joining the company, Burlakoff and an Insys sales representative assigned to Southwest Florida met with Chun and Chun's then-girlfriend at a Sarasota restaurant to discuss paying Chun kickbacks and bribes as a purported speaker for the Insys Speaker Programs in return for Chun prescribing Subsys and increasing the dosage and units of Subsys, a process known as titration.

b.    On or about August 25, 2012, Chun's assigned sales representative sent Babich an email, copying Burlakoff, stating that Chun "[s]cripts have dropped off as he has told me some of his patients are

11

preferring [a competitor]....But he continues to tell me that he will continue to prescribe Subsys whenever he can. I think using him as a speaker will cause things to pick back up again. I have two programs planned so far."

        c.     On or about December 6, 2012, Insys conspirators hired and incentivized Tondre, who had previously worked as Chun's sales representative for another pharmaceutical company that marketed fentanyl products, to work as an Insys sales representative serving the West Florida area that included Chun, in a continued effort to induce Chun to increase his Subsys prescribing.

        d.     On or about March 12, 2013, Burlakoff sent an email to Tondre, and others, asking, "[w]here is Dr. Chun, we cannot go a single day without a prescription from Dr. Chun. I do not want to hear any excuses, we pay good money here (we need 1 a day from Chun)."

        e.     In or about March 2013, Chun began receiving payments from Pharmacist 1, under a purported consultant agreement, at the rate of $1500 per hour.

        f.     On or about September 18, 2013, in an effort to further induce Chun to increase his Subsys-prescribing, Babich tendered an employment offer, including salary and a $1000 monthly car allowance, to Chun's then-girlfriend to work as an Insys Area Business Liaison beginning September 23, 2013.

g.      On or about September 23, 2013, Chun and Chun's then-girlfriend, as co-owners, acquired a 2013 BMW Sedan to use in her role as an Insys Area Business Liason.

h.      On or about October 3, 2013, not satisfied with the increase in Chun's Subsys prescriptions, Burlakoff sent an email to Tondre describing what was expected in exchange for the kickbacks and bribes paid to Chun that read:

> Where is Chun?
>
> Not even close to meeting anyone's expectations thus far, perhaps- we had failed in setting our expectations? We were looking to go from 40 percent market share to 90 percent?
>
> Dan, please do not respond with a 5 page e mail bashing me ... I have to sit in the corporate office and answer these questions face to face. It is not fun, and the recent move we made on the ABL appears as if it is potentially not worth it?

i.      On or about May 20, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Ft. Myers, Florida, purportedly attended by one licensed practitioner.

j.      On or about May 20, 2014, Chun, Tondre, and others created or caused to be created a false and fraudulent Speaker Program sign-in

sheet that included the name and forged signature of a licensed practitioner who did not attend the purported May 20 Speaker Program.

        k.      On or about May 20, 2014, Chun, Tondre, and others submitted or caused to be submitted to Insys, a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of a licensed practitioner who did not attend the purported May 20 Speaker Program.

        l.      In or about early summer 2014, Insys paid and Chun received a $3,000 payment, via check, as a kickback and bribe for Chun's role in the purported May 20, 2014 Speaker Program.

        m.      On or about May 22, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Longboat Key, Florida, which included only Chun, Tondre, and one other licensed practitioner, who was also an Insys speaker.

        n.      On or about May 22, 2014, Chun, Tondre, and others submitted or caused to be submitted to Insys three sign-in sheets for the purported May 22 Speaker Program.

        o.      In or about early summer 2014, Insys paid and Chun received a $3,000 payment, via check, as a kickback and bribe for Chun's role in the purported May 22, 2014 Speaker Program.

p.      On or about October 6, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, attended by Pharmacist 1, who was the only licensed practitioner to attend.

q.      On or about October 6, 2014, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheets that included the names and forged signatures of licensed practitioners who did not attend the purported October 6 Speaker Program.

r.      On or about October 6, 2014, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third party administrator), false and fraudulent Speaker Programs sign-in sheets that included, among other identifying information, the names and forged signatures of two other licensed practitioners who did not attend the purported October 6 Speaker Program.

s.      On or about October 10, 2014, Insys paid (through a third party administrator) and Chun received check number 27004 in the amount of $3,000 as a kickback and bribe for Chun's role in the purported October 6, 2014 Speaker Program.

t.      On or about October 8, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in

Bradenton, Florida, attended by Pharmacist 1, who was the only licensed practitioner to attend.

   u. On or about October 8, 2014, Chun, Tondre, and others created and caused to be created a false and fraudulent Speaker Program sign-in sheets that included the names and forged signatures of two other licensed practitioners who did not attend the purported October 8 Speaker Program.

   v. On or about October 8, 2014, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), false and fraudulent Speaker Program sign-in sheets that included, among other identifying information, the names and forged signatures of two other licensed practitioners who did not attend the purported October 8 Speaker Program.

   w. On or about October 13, 2014, Insys paid (through a third party administrator) and Chun received check number 27066 in the amount of $3000 as a kickback and bribe for Chun's role in the purported October 8, 2014 Speaker Program.

   x. On or about October 14, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida attend by Pharmacist 1, who was the only licensed practitioner to attend.

y.      On or about October 14, 2014, Chun, Tondre, and others created or caused to be created a false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of another licensed practitioner who did not attend the purported October 14 Speaker Program.

z.      On or about October 14, 2014, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of another licensed practitioner who did not attend the purported October 14 Speaker Program.

aa.     On or about October 16, 2014, Insys paid (through a third party administrator) and Chun received check number 27190 in the amount of $3000 as a kickback and bribe for Chun's role in the purported October 14, 2014 Speaker Program.

bb.     On or about November 5, 2014, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, attended by Pharmacist 1, who was the only licensed practitioner to attend.

cc.     On or about November 5, 2014, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in

sheet that included the name and forged signature of another licensed

practitioner who did not attend the purported November 5 Speaker Program.

      dd.    On or about November 5, 2014, Chun, Tondre, and

others submitted and caused to be submitted to Insys (through a third-party

administrator), a false and fraudulent Speaker Program sign-in sheet that

included, among other identifying information, the name and forged signature

of another licensed practitioner who did not attend the purported November 5

Speaker Program.

      ee.    On or about November 7, 2014, Insys paid (through a

third party administrator) and Chun received check number 27760 in the

amount of $3,000 as a kickback and bribe for Chun's role in the purported

November 5, 2019 Speaker Program.

      ff.    On or about February 12, 2015, Chun, Tondre, and other

Insys co-conspirators arranged a purported Speaker Program at a restaurant in

Sarasota, Florida, attended by Pharmacist 1, who was the only licensed

practitioner to attend.

      gg.    On or about February 12, 2015, Chun, Tondre, and others

created or caused to be created false and fraudulent Speaker Program sign-in

sheet that included the name and forged signature of another licensed

practitioner who did not attend the purported February 12 Speaker Program.

hh.    On or about February 12, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of another licensed practitioner who did not attend the purported February 12 Speaker Program.

ii.    On or about February 17, 2015, Insys paid (through a third party administrator) and Chun received check number 29339 issued by Insys's third-party payer in the amount of $3,000 as a kickback and bribe for Chun's role in the purported February 12, 2015 Speaker Program.

jj.    On or about April 14, 2015, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, purportedly attended by Pharmacist 1, and two other licensed practitioners, one who was an Insys speaker.

kk.    On or about April 14, 2015, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of licensed practitioner who did not attend the purported April 14 Speaker Program.

ll.    On or about April 14, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party

administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of the licensed practitioner who did not attend the purported April 14 Speaker Program.

mm.    On or about May 4, 2015, Insys paid (through a third party administrator) and Chun received check number 30597 in the amount of $3,000 as a kickback and bribe for Chun's role in the purported April 14, 2015 Speaker Program.

nn.    On or about April 28, 2015, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, attended by Pharmacist 1 and another doctor who was also an Insys speaker.

oo.    On or about April 28, 2015, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of another licensed practitioner who did not attend the purported April 28 Speaker Program.

pp.    On or about April 28, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature

of another licensed practitioner who did not attend the purported April 28 Speaker Program.

        qq.    On or about May 5, 2015, Insys paid (through a third party administrator) and Chun received check number 31021 in the amount of $3,000 as a kickback and bribe for Chun's role in the purported April 28, 2015 Speaker Program.

        rr.    On or about May 5, 2015, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, purportedly attended by Pharmacist 1, and two other licensed practitioners, one who was an Insys speaker.

        ss.    On or about May 5, 2015, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of another licensed practitioner who did not attend the purported May 5 Speaker Program.

        tt.    On or about May 5, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of another licensed practitioner who did not attend the purported May 5 Speaker Program.

uu.    On or about May 11, 2015, Insys paid (through a third party administrator) and Chun received check number 31121 in the amount of $3,000 as a kickback and bribe for Chun's role in the purported May 5, 2015 Speaker Program.

vv.    On or about May 8, 2015, Chun, Tondre and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Naples, Florida, attended by Pharmacist 1, who was the only licensed practitioner to attend.

ww.    On or about May 8, 2015, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of another licensed practitioner who did not attend the purported May 8 Speaker Program.

xx.    On or about May 8, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of another licensed practitioner who did not attend the purported May 8 Speaker Program.

yy.    On or about May 12, 2015, Insys paid (through a third party administrator) and Chun received check number 31186 in the amount of

$4,700 as a kickback and bribe for Chun's role in the purported May 8, 2015 Speaker Program.

        zz.    On or about June 16, 2015, Chun, Tondre, and other Insys co-conspirators arranged a purported Speaker Program at a restaurant in Sarasota, Florida, attended by Pharmacist 1, and another licensed practitioner.

        aaa.    On or about June 16, 2015, Chun, Tondre, and others created or caused to be created false and fraudulent Speaker Program sign-in sheet that included the name and forged signature of licensed practitioner who did not attend the purported June 16 Speaker Program.

        bbb.    On or about June 16, 2015, Chun, Tondre, and others submitted and caused to be submitted to Insys (through a third-party administrator), a false and fraudulent Speaker Program sign-in sheet that included, among other identifying information, the name and forged signature of the licensed practitioner who did not attend the purported June 16 Speaker Program.

        ccc.    On or about June 22, 2015, Insys paid (through a third party administrator) and Chun received check number 32230 in the amount of $3,000 as a kickback and bribe for Chun's role in the purported June 16, 2015 Speaker Program.

        All in violation of 18 U.S.C. § 371.

### COUNTS TWO THROUGH SIX
### (Offering and Paying Remuneration—Kickbacks and Bribes)

1.     Paragraphs 1 through 11 and 13 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

### DANIEL TONDRE,

did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, ordering, and arranging for, and recommending purchasing and ordering, any good, service, and item for which payment may be made in whole and in part by Medicare, as set forth below:

| Count | Date of Check | Check Number | Amount | Speaker Program Date/Location |
|-------|---------------|--------------|--------|-------------------------------|
| TWO   | 5/4/2015      | 30597        | $3,000 | 4/14/2015 Sarasota, FL Restaurant |
| THREE | 5/5/2015      | 31021        | $3,000 | 4/28/2015 Sarasota, FL Restaurant |
| FOUR  | 5/11/2015     | 31121        | $3,000 | 5/5/2015 Sarasota, FL Restaurant |

| Count | Date of Check | Check Number | Amount | Speaker Program Date/Location |
|-------|---------------|--------------|--------|------------------------------|
| FIVE | 5/12/2015 | 31186 | $4,700 | 5/8/2015 Naples, FL Restaurant |
| SIX | 6/22/2015 | 32230 | $3,000 | 6/16/15 Sarasota, FL Restaurant |

In violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

## COUNTS SEVEN THROUGH ELEVEN
### (Soliciting and Receiving Remuneration—Kickbacks and Bribes)

1.      Paragraphs 1 through 11 and 13 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

STEVEN CHUN,

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, ordering, and arranging for, and recommending purchasing and ordering, any good, service, and item for which payment may be made in whole and in part by Medicare, as set forth below:

25

| Count | Date of Check | Check Number | Amount | Speaker Program Date/Location |
|-------|---------------|--------------|--------|-------------------------------|
| SEVEN | 5/4/2015 | 30597 | $3,000 | 4/14/2015 Sarasota, FL Restaurant |
| EIGHT | 5/5/2015 | 31021 | $3,000 | 4/28/2015 Sarasota, FL Restaurant |
| NINE | 5/11/2015 | 31121 | $3,000 | 5/5/2015 Sarasota, FL Restaurant |
| TEN | 5/12/2015 | 31186 | $4,700 | 5/8/2015 Naples, FL Restaurant |
| ELEVEN | 6/22/2015 | 32230 | $3,000 | 6/16/15 Sarasota, FL Restaurant |

In violation of 42 U.S.C. § 1320a-7b(b)(l) and 18 U.S.C. § 2.

## COUNTS TWELVE THROUGH SIXTEEN
### (Identification Fraud)

1.      Paragraphs 1 through 11 and 13 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates below, in the Middle District of Florida, and elsewhere, the defendants,

STEVEN CHUN
and
DANIEL TONDRE,

did knowingly transfer, possess, and use, without lawful authority, a means of

identification of another person, specifically, the names, signatures, National

Provider Identification (NPI) numbers, and state license number of the

licensed practitioners listed below (by initials), in connection with an unlawful

activity that constitutes a violation of federal law, that is, soliciting and

receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. §

1320a-7b(b)(1), and offering and paying remuneration (kickbacks and bribes),

in violation of 42 U.S.C. § 1320a-7b(b)(2), as charged above in Counts Two

through Eleven, and conspiracy to do so, in violation of 18 U.S.C. § 371, as

charged in Count One, knowing that such means of identification belonged to

the actual persons.

| Count | Date of Speaker Program | Licensed Practitioner | Speaker Program Location |
|---|---|---|---|
| TWELVE | 4/14/2015 | J.C. | Sarasota, FL Restaurant |
| THIRTEEN | 4/28/2015 | M.M. | Sarasota, FL Restaurant |

| Count | Date of Speaker Program | Licensed Practitioner | Speaker Program Location |
|-------|------------------------|----------------------|--------------------------|
| **FOURTEEN** | 5/5/2015 | M.M. | Sarasota, FL Restaurant |
| **FIFTEEN** | 5/8/2015 | J.P | Naples, FL Restaurant |
| **SIXTEEN** | 6/16/2015 | M.D.R. | Sarasota, FL Restaurant |

In violation of 18 U.S.C. §§ 1028(a)(7) and 2.

## FORFEITURE

1.    The allegations contained in Counts One through Sixteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7) and (a)(2)(B).

2.    Upon their conviction for any or all of the violations alleged in Counts One through Eleven of this Indictment, the defendants,

STEVEN CHUN
and
DANIEL TONDRE,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), all of their interest in any property, real or personal, constituting or derived,

directly or indirectly, from gross proceeds traceable to the commission of the said violations.

3.    Upon their conviction for any or all of the violations alleged in Counts Ten through Thirteen of this Indictment, the defendants,

STEVEN CHUN
and
DANIEL TONDRE,

shall forfeit to the United States of America, pursuant to 18 U.S.C.

§ 982(a)(2)(B), all of their interest in any property, constituting, or derived

from, proceeds obtained directly or indirectly, as a result of the commission of the offenses.

4.    The specific property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained.

5.    If any of the property described above, as a result of any act or omission of defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or,

e.    has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute

property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18

U.S.C. § 982(b).

A TRUE BILL,

Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By:

Kelley C. Howard-Allen
Assistant United States Attorney

By:

Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
March 20

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

STEVEN CHUN and DANIEL TONDRE

## INDICTMENT

Violations:   18 U.S.C. §§ 371, 1028(a)(7); 42 U.S.C. §§ 1320a-7b(b)(2), 1320a-7b(b)(l)

A true bill,

_____
Foreperson

Filed in open court this 12<u>th</u> day

of March 2020.

_____
Clerk

Bail $_____